UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

GRISEL ALONSO, as Receiver for
Elm Tree Investment Advisors, LLC,
Elm Tree Investment Fund, LP,                    Case No.
Elm Tree 'e'Conomy Fund, LP, and                 Proceeding Ancillary to
Elm Tree Motion Opportunity, LP,                 No. 15-CV-60082-Dimitrouleas/Snow

      Plaintiff,

v.

AEROFUND FINANCIAL, INC.,
a California corporation,

      Defendant.
_____/

## COMPLAINT

Plaintiff, Grisel Alonso (the "Receiver"), as Receiver for Elm Tree Investment Advisors, LLC, Elm Tree Investment Fund, LP, Elm Tree 'e'Conomy Fund, LP, and Elm Tree Motion Opportunity, LP, by and through undersigned counsel, hereby files this action against Defendant, Aerofund Financial, Inc. ("Aerofund"), and alleges as follows:

## PRELIMINARY STATEMENT

1. On January 15, 2015, the Securities and Exchange Commission ("SEC") commenced an action in the United District Court for the Southern District of Florida, styled *Securities and Exchange Commission v. Frederic Elm f/k/a Frederic Elmaleh, et al.,* Case No. 15-cv-60082 (the "Commission Proceeding").

2. The SEC's Complaint for Injunctive and Other Relief alleges that between no later than November 2013 to January 2015, Defendants Frederic Elm f/k/a Frederic Elmaleh ("Elm") and Defendants Elm Tree Investment Advisors, LLC, Elm Tree Investment Fund, LP, Elm Tree

'e'Conomy Fund, LP, and Elm Tree Motion Opportunity, LP (collectively, the "Receivership Entities") engaged in a fraudulent securities "Ponzi" scheme through the offer and sale of fraudulent investments that raised more than $17 million from more than 50 investors (the "Fraudulent Scheme").

3. Elm was the ultimate owner of the Receivership Entities and had the ability or ultimate right to control their operations. The Receivership Entities were used to perpetrate the Fraudulent Scheme by acting as conduits for funneling investor money to or from investors and to loot the Receivership Entities for the benefit of Elm and his family members.

4. The Commission Proceeding alleges that Elm misappropriated at least $2 million in investor funds to pay for personal items and expenses and by making improper payments to his wife, Amanda Elm f/k/a Amanda Elmaleh.

5. On January 16, 2015, Judge William Dimitrouleas of the United States District Court for the Southern District of Florida entered an order in the Commission Proceeding (the "Receivership Order") appointing Grisel Alonso as Receiver for the Receivership Entities. A true and correct copy of the Receivership Order is attached hereto as **Exhibit A**.

6. The Receiver was appointed pursuant to the Court's inherent equity powers to carry out the purposes of the Commission Proceeding, which was brought pursuant to the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934.

7. Pursuant to the Receivership Order, the Receiver is ordered to, among other things, "[t]ake immediate possession of all property, assets and estates of every kind of [the Receivership Entities] … and institute such actions and legal proceedings … as the Receiver deems necessary … against any transfers of money or other proceeds directly or indirectly traceable from investors in [the Receivership Entities]".

8. This action by the Receiver against Aerofund is brought pursuant to the Receivership Order, which charged the Receiver with marshaling assets of the Receivership Estate for the benefit of defrauded investors.

## JURISDICTION AND VENUE

9. This action is ancillary to the Commission Proceeding. Accordingly, this Court has supplemental jurisdiction over the subject matter pursuant to 28 U.S.C. § 1367(a) because it is an ancillary action to the Commission Proceeding, over which this Court has federal question jurisdiction. This complaint is brought to accomplish the objectives of the Receivership Order and to seek recovery of funds that Aerofund received resulting from the Fraudulent Scheme outlined in the Commission Proceeding. Therefore, supplemental jurisdiction is proper in the Southern District of Florida because the claims raised in this Complaint are so related to the claims involved in the Commission Proceeding that they form part of the same case or controversy under Article III of the United States Constitution.

10. The Court has personal jurisdiction over Aerofund pursuant to the Securities and Exchange Act, 15 U.S.C. §78aa, because this action arises from the Commission Proceeding, which provides for nationwide service of process under the Federal Securities Laws, and because Aerofund, a California corporation, has sufficient minimum contacts with the United States to satisfy the Fifth Amendment's due process requirements. Alternatively, the Court has personal jurisdiction over Aerofund pursuant to Section 48.193(1)(a), Florida Statutes, because Aerofund engaged in a business venture in this State from which the Receiver's claims arise and because Aerofund has sufficient minimum contacts with the State of Florida to satisfy due process requirements.

11. Venue in this District and Division is proper because a substantial part of the events giving rise to the claims occurred in this District, because this action is related to the Commission Proceeding pending in this District, and because the Receiver was appointed by the Court in this District.

## PARTIES

12. Plaintiff Grisel Alonso is the duly appointed and acting Receiver for the Receivership Entities.

13. Aerofund is a California corporation with its principal place of business in San Jose, Santa Clara County, California.

## FACTS

**A. The Fraudulent Scheme**

14. Elm, through the sale of securities in the Elm Tree Investment Fund, LP, Elm Tree 'e'Conomy Fund, LP, and Elm Tree Motion Opportunity, LP (collectively, the "Elm Tree Funds"), raised at least $17 million from more than 50 investors.

15. Elm was the founder and managing director of Elm Tree Investment Advisors, LLC ("ETIA") and the general partner and manager of the Elm Tree Funds.

16. The offering documents for the Elm Tree Funds provided that Elm and ETIA would charge a 2% annual management fee, but would not receive any additional fees unless and until the Elm Tree Funds made a profit. But Elm and ETIA invested only a portion of the investor funds raised.

17. At no point did Elm or the Elm Tree Funds earn a profit that would have entitled them to additional fees under the offering documents. Instead, Elm and ETIA used the majority of the funds to pay back investors in Ponzi-like fashion and for Elm's own personal use.

18. Elm misappropriated at least $2 million in investor funds to pay for personal items and expenses such as a home, high-end furnishings, and other personal items such as automobiles, jewelry, and daily living expenses.

19. Investors sent their investment funds to Elm by wire transfer or by mailing a check. Elm initially deposited investor funds into bank accounts held by ETIA, the Elm Tree Funds, or his own personal bank account. Elm then transferred the money back and forth between the various accounts and commingled money invested in one of the Elm Tree Funds with money invested in the others.

20. The Elm Tree Funds did not generate a profit. While Elm invested a portion of investor funds, he used the vast majority of the funds to repay other investors in a Ponzi scheme, and to fund his own personal expenses and the expenses of his wife, Amanda Elm.

21. Elm defrauded investors through his control of the Receivership Entities.

22. A large number of investors in the Elm Tree Funds received no distributions from the Elm Tree Funds of purported trading or other investment profits, or they received such distributions in an amount that was less than the amount they invested. As such, each of those investors suffered a net loss.

B. **The Transfers to Aerofund**

23. From November 26, 2012 to December 31, 2014, millions of dollars received from investors in the Elm Tree Funds were deposited in the Receivership Entities' accounts in connection with the Fraudulent Scheme. Elm commingled the funds received from investors between and among the accounts for the Receivership Entities and Elm's personal account, and used the investors' funds to pay third parties, including Aerofund.

24. On November 26, 2013, funds in the amount of $100,000.00 received from an investor in the Elm Tree Funds were deposited into an account in the name of Elm Tree 'e'Conomy Fund, LP.

25. That same day, November 26, 2013, Elm transferred funds in the amount of $50,000.00 from the Elm Tree 'e'Conomy Fund, LP account into an account in the name of ETIA.

26. The next day, on November 27, 2013, Elm transferred funds in the amount of $20,000.00 from the ETIA account and funds in the amount of $47,000.00 from the Elm Tree 'e'Conomy Fund, LP account into a personal account in the name of Elm and his wife, Relief Defendant Amanda Elm (collectively, the "Elms").

27. Also, on November 27, 2013, Elm transferred funds in the amount of $20,000.00 from the Elms' personal account to Aerofund.

28. On January 6, 2014, Elm transferred funds in the amount of $20,000.00 from an account in the name of ETIA to Aerofund.

29. On March 17, 2014, Elm transferred funds in the amount of $15,000.00 from the Elms' personal account to Aerofund.

30. On April 22, 2014, Elm transferred funds in the amount of $15,000.00 from an account in the name of ETIA to Aerofund.

31. In all, Aerofund received transfers of funds in the amount of $70,000.00 (collectively, the "Aerofund Transfers"), all of which were derived from the fraud perpetrated upon investors by Elm through his use of the Receivership Entities.

32. The Receivership Entities did not receive reasonably equivalent value in exchange for the Aerofund Transfers, which were made to the detriment of the Receivership Estate.

33. All of the money Elm wrongfully caused to be transferred to Aerofund was diverted and misappropriated by Elm in furtherance of his scheme. Thus, all of the money transferred or paid to Aerofund was improperly diverted assets of one or more of the Elm Tree Funds and thus the Receivership Estate.

34. To allow Aerofund to keep the funds transferred by Elm and ETIA would be inequitable and unjust, including to the investors of the Elm Tree Funds.

35. All conditions precedent to filing this action have been performed, occurred, or have been waived.

## COUNT I

### Fraudulent Transfer under Section 726.105, Florida Statutes

36. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-35, as if fully stated herein.

37. This is a claim to avoid and recover fraudulent transfers to Aerofund pursuant to Section 726.105, Florida Statutes.

38. Elm and the Receivership Entities transferred a total of $70,000.00 to Aerofund for the benefit of Elm.

39. By Elm intentionally and wrongfully causing the transfer to Aerofund of investors' commingled principal investment money, the Receivership Entities and the Receiver have a right to repayment of those funds from Aerofund.

40. In light of this right to repayment, the Receivership Entities and the Receiver have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act. Accordingly, Elm is a debtor under that act.

41. The Aerofund Transfers were inherently fraudulent because they were made as part of Elm's Fraudulent Scheme. The Receiver, as the representative of the Receivership Entities, is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused to be made to Aerofund because the money given to Elm and the Elm Tree Funds by investors was commingled among the Receivership Entities and Elm used the funds and Receivership Entities as a single, continuous scheme.

42. The transfers to Aerofund were fraudulent under Florida Statutes § 726.105(1)(a) because Elm caused the Receivership Entities to make the transfers with actual intent to hinder, delay, or defraud creditors of Elm and the Elm Tree Funds.

43. Those transfers were also fraudulent under Florida Statutes § 726.105(1)(b) because the transfers were made without the Receivership Entities receiving a reasonably equivalent value in exchange for the transfers and because Elm and the Receivership Entities (1) were engaged or were about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed they would incur, debts beyond their ability to pay as they became due.

44. On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Aerofund, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Aerofund and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

45. On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

46. The Receivership Estate has been damaged and diminished as a direct and proximate result of the Aerofund Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Aerofund Financial, Inc. for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT II

### Fraudulent Transfer under Section 726.106, Florida Statutes

47. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-35, as if fully stated herein.

48. This is a claim to avoid and recover fraudulent transfers to Aerofund pursuant to Section 726.106, Florida Statutes.

49. Elm and the Receivership Entities transferred a total of $70,000.00 to Aerofund for the benefit of Elm.

50. By Elm intentionally and wrongfully causing the transfer to Aerofund of investors' commingled principal investment money, the Receiver and Receivership Entities have a right to repayment of those funds from Aerofund.

51. In light of this right to repayment, the Receiver and Receivership Entities have a claim against Elm and consequently are creditors of Elm under Florida's Uniform Fraudulent Transfer Act. Accordingly, Elm is a debtor under that act.

52. The transfers to Aerofund were fraudulent under Florida Statutes § 726.106(1) because the Elm Tree Funds and Receivership Entities did not receive a reasonably equivalent value in exchange for the transfers and Elm and the Receivership Entities were insolvent at all relevant times.

53. On behalf of the Elm Tree Funds and Receivership Entities from which money was transferred to Aerofund, directly or indirectly, the Receiver is entitled to avoid and recover transfers equal to the amount of the transfers that Elm caused Aerofund and to any other pertinent remedy, including those available under Florida Statutes § 726.108.

54. On behalf of the Elm Tree Funds and Receivership Entities, the Receiver is entitled to avoid and recover those transfers because (i) money was commingled among the Receivership Entities and (ii) Elm used the Receivership Entities as a single, continuous scheme.

55. The Receivership Estate has been damaged and diminished as a direct and proximate result of the Aerofund Transfers.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Aerofund Financial, Inc. for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

## COUNT III

### Unjust Enrichment

56. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1-35, as if fully stated herein.

57. This unjust enrichment claim is asserted in the alternative, in the event the statutory remedies asserted in Counts I and II do not provide an adequate remedy at law.

58. Through the Aerofund Transfers, the Elm Tree Funds and Receivership Entities conferred a substantial benefit on Aerofund.

59. Aerofund knowingly and voluntarily accepted and retained a benefit in the form of the Aerofund Transfers.

60.     Aerofund's retention of this benefit is inequitable and unjust because, *inter alia*, Aerofund failed to provide anything of value to the Receivership Entities in exchange for the benefit, the Aerofund Transfers were made to the detriment of the Receivership Entities and investors in the Elm Tree Funds, and the Aerofund Transfers dissipated assets of the Receivership Entities that could have been otherwise available to the Receivership Estate.

61.     Allowing Aerofund to retain the Aerofund Transfers would unjustly enrich Aerofund to the detriment of the Receivership Entities and the Receivership Estate, and would allow Elm to benefit from his involvement in the Fraudulent Scheme.

62.     Accordingly, the Receiver, on behalf of the Receivership Entities, is entitled to the return of that money through disgorgement or any other applicable remedy.

WHEREFORE, Plaintiff Grisel Alonso, as Receiver, requests this Court to enter a judgment against Defendant Aerofund Financial, Inc. for all damages incurred including, but not limited to, all costs and prejudgment interest, and all other relief this Court deems just.

Dated April 11, 2016.                              Respectfully submitted,

**BROAD AND CASSEL**
Attorneys for Receiver
2 South Biscayne Boulevard, 21st Floor
Miami, FL 33131
Tel: (305) 373-9400
Fax: (305) 373-9443

By:     *s/Daniel S. Newman*
          Daniel S. Newman, P.A.
          Florida Bar No. 0962767
          dnewman@broadandcassel.com
          Amanda Star Frazer, Esq.
          Florida Bar No. 43921
          afrazer@broadandcassel.com